Filed 3/17/14  In re Gary G. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re GARY G., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B250613 (Super. Ct. No. J068869) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>Petitioner and Respondent,<br><br>v.<br><br>LAURIE G. and CHRISTOPHER G.,<br><br>Appellants. | |

Laurie G. and Christopher G. appeal from the July 26, 2013 order terminating their parental rights and freeing their five-year-old son, Gary G., for adoption.  (Welf. & Inst. Code, § 366.26.)[1]   Appellants contend that the beneficial parent-child relationship exception precludes adoption. (§ 266.26, subd. (c)(1)(B)(1).) We affirm.

*Procedural History*

On June 8, 2012, Ventura County Human Services Agency (HSA) removed Gary because of appellants' domestic violence and substance abuse.  Appellants had a

---

[1] All statutory references are to the Welfare & Institutions Code.

lengthy history of domestic violence dating back to 2007 when father hit mother while she was pregnant with Gary.

On June 12, 2012, after father was arrested for domestic violence, HSA filed a dependency petition for failure to protect (§ 300, subd. (b)) and no provision for support (§ 300, subd. (g)). At the contested jurisdiction/disposition hearing, the trial court declared Gary a dependent of the court and ordered reunification services.

At the six-month review hearing, HSA reported that father refused to sign the case plan, missed all his drug tests, and refused to participate in alcohol/drug counseling. During the reunification period, father was arrested for: possession of a controlled substance (September 4, 2012); possession of a controlled substance, vandalism, and disobeying a domestic court order (September 10, 2012); and vandalism and disobeying a domestic court order (November 18, 2012).

Mother obtained a restraining order but continued seeing father until he was arrested November 18, 2012. Before the six month review hearing, mother called the police seven or eight times to enforce the restraining order. HSA reported that mother was not attending a substance abuse treatment program, missed 14 drug tests, and declined to participate in one-on-one domestic violence counseling. Mother was offered unsupervised visits if she remained clean and sober, but tested positive for methamphetamine on two occasions.

The trial court terminated services on February 20, 2013, and set the matter for a section 366.26 hearing. Father gave notice of intent to file a writ petition but the matter was dismissed as abandoned on April 3, 2013. (B247129.)

At the section 366.26 hearing, HSA recommended that the trial court terminate parental rights and select adoption as the permanent placement plan. It was uncontroverted that Gary was adoptable and that the paternal grandmother was 100 percent committed to adopting Gary.

On the issue of beneficial parent-child relationship, the social worker testified that appellants had not addressed their substance abuse and domestic violence problems and were still seeing each other. Father missed three months of scheduled

2

visits while serving a jail sentence. When father did visit, he brought toys. The social worker described the visits as "playtime for the two of them." "[I]t's more of a friendship . . . ."

The social worker testified that Gary was bonded to his grandmother and "looks at her as a parent. [Gary] looks to her for support and emotional support. When he's sick, he goes to her." When told that he would probably be staying with his grandmother for a long time, Gary replied, "Good. That's okay. I'm okay with that." When asked about life with his parents, Gary exclaimed: "Yelling. Lots and lots of yelling; mom would yell and dad would yell, then I'd say stop."

The trial court found that appellants had not shown that continuing the parent-child relationship was beneficial to Gary or outweighed the benefit Gary would gain from the stability and permanency of adoption.

### Parent-Child Relationship Exception

Where reunification services are terminated, the focus shifts to the needs of the child for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.) Appellants have a "heavy burden" of proving that the parent-child exception overcomes the preference for adoption. (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.) "Because a parent's claim to . . . an exception [to termination of parental rights] is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will chose a permanent plan other than adoption. [Citation.]" (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.)

To establish the parent-child relationship exception, appellants must show they maintained regular visitation and contact, and that Gary would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) Although mother satisfied the visitation prong, there was no evidence that "severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) The social worker testified that the visits were loving and affectionate, but appellants' relationship with Gary was that of a friendly visitor rather

3

than a parent-child. Appellants did not advance beyond supervised visits and there was no evidence that termination of parental rights would be detrimental to Gary.

*In re S.B.* (2008) 164 Cal.App.4th 289 is inapposite. There, the father fully participated in services, maintained his sobriety, sought medical and psychological services, and complied with every aspect of his case plan. (*Id.*, at p. 298.) Unlike *In re S.B.,* appellants failed to follow the case plan, continued using drugs, and ran into trouble with the law. Father was arrested multiple times for drug possession and violating a stay away order. Mother was arrested for attempted burglary and resisting a peace officer. Appellants' domestic violence is and was an on-going problem. At one supervised visit, appellants ended the visit with a screaming match

Before Gary was detained, he heard and saw father abuse mother. Mother reported that father yelled and beat her, forcing her to perform oral sex as appellant struck her on the head with a closed fist. When father learned that mother wanted to leave and take Gary, father demanded that she "suck his dick" and pushed her down as mother kicked and scratched his face. Father claimed that mother was high on methamphetamine and refused to get out of bed to care for Gary.

The evidence clearly shows that appellants are unable to provide Gary a stable, safe, and loving home. (See e.g., *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 644.) The social worker testified that Gary has a great relationship with his grandmother and has lived with her a year. "[T]hat is a significant amount of time for any child [his] age. A year to [Gary] would be ten years to us. And he needs the stability. . . . He needs to know that the has a safe home to go to, that he doesn't have to hear yelling . . . . [T]he significance of having the stability at a five -year age is tremendous for any child." Sandra Ramirez supervised 75 visits and described Gary as affectionate, "very talkative, . . . very personable, friendly. Just a really good, good little boy."

Appellants argue that the trial court failed to consider legal guardianship. The grandmother, however, is totally committed to adopting Gary and is not interested in a legal guardianship. Unlike the cases cited by appellants, there is no evidence that the

4

grandmother is unwilling or prefers guardianship over adoption. (See § 366.26, subd. (c)(1)(A); *In re K.H.* (2011) 201 Cal.App.4th 406, 419; *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1297-1298; *In re Xavier G.* (2007) 157 Cal.App.4th 208, 214.)

*Conclusion*

Appellants have not shown that severing the parent-child relationship would deprive Gary "of a substantial, positive emotional attachment such that the child would be greatly harmed . . . ." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The trial court reasonably concluded that appellant's relationship with Gary did not outweigh the permanency and stability of an adoptive placement that Gary so badly needs. (*In re Angel B., supra,* 97 Cal.App.4th at p. 468.) "The reality is that childhood is brief; it does not 'wait until a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

The judgment (order terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.


5

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____

Maureen L. Keaney, under appointment by the Court of Appeal, for Laurie G., Appellant.

James A. Moran, under appointment by the Court of Appeal, for Christopher G., Appellant.

Leroy Smith, County Counsel, County of Ventura; Linda Stevenson, Assistant County Counsel, for Respondent.