189 Cal.App.3d 1032 (1987)
234 Cal. Rptr. 739
In re DEBRA M., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF ADOPTIONS, Plaintiff and Respondent,
v.
VALERIE M., Defendant and Appellant.
Docket No. B022064.
Court of Appeals of California, Second District, Division One.
February 26, 1987.
*1033 COUNSEL
Susan L. Wolk, under appointment by the Court of Appeal, for Defendant and Appellant.
De Witt W. Clinton, County Counsel, and Joe Ben Hudgens, Senior Deputy County Counsel, for Plaintiff and Respondent.
OPINION
HANSON (Thaxton), Acting P.J.
Appeal taken from an order of the juvenile court after a permanency planning hearing held pursuant to Welfare and Institutions Code section 366.25.[1] The juvenile court ordered, among other things, that a minor, Debra M., born January 30, 1982, now five years of age, be referred to the Los Angeles County Department of Adoptions for adoptive planning. Debra's mother, Valerie M., has appealed to this court. For reasons which we shall explain, we regard the appeal as premature, and dismiss it.

FACTUAL AND PROCEDURAL BACKGROUND
Debra, the minor, first came to the attention of the juvenile court as the result of a petition filed December 9, 1983, shortly before her first birthday. The petition, which was sustained, alleged that Debra was a dependent child within the meaning of Welfare and Institutions Code section 300, and that her mother, Valerie, due to emotional instability, suicidal tendencies and drug abuse, was unable to care for her properly. The identity of Debra's father was unknown.
*1034 An order of suitable placement for Debra was made by the juvenile court on April 5, 1984. Debra was cared for by her aunt and uncle, Yolanda and Porfilo M. through much of her infancy; Porfilo M. is Valerie's brother, and has four children of his own. Debra was placed in at least one foster home, but the foster parents gave up their license, and she was at some point returned to the home of her aunt and uncle. At the time of the permanency planning hearing, she was living with them, but her aunt and uncle indicated to the court through counsel that they did not wish to become Debra's parents.
Hearing was held in this matter in April, May and June 1986, a combined judicial review and permanency planning hearing. The minor's mother, Valerie, was present, as were Yolanda and Porfilo M., who care for the minor. Valerie presented testimony concerning her attempts to live free of drugs; while it appears she has had some success, she was faced with criminal charges of a serious nature at the time of hearing, was unemployed, and continued to be very transient in her living arrangements. The court heard the opinion of a psychiatrist, Saul Niedorf, M.D., a specialist in adult and child psychiatry, that Valerie was making progress in becoming more stable and that it would be detrimental to Debra to break the bond with her mother. Debra refers to Valerie as "Mommy," but Valerie has not visited the child regularly or frequently; there are bad feelings between Valerie and the M. caretakers, her brother and sister-in-law, which make visitation difficult.
On June 2, 1986, the juvenile court judge made the following orders:[2] "The minor is to remain a dependent child of the court under Section 300, subdivision a, suitable placement order of 4-5-84 to remain in full force and effect. [¶] Department of Children's Services to provide permanent placement services for the minor. [¶] The minor's mother is ordered to participate in a program of counseling as approved by DCS. [¶] The minor, Deborah [sic] [M.], will be referred to the Department of Adoptions for adoptive planning for 362, 365, of the Welfare and Institutions Code. [¶] Department of Adoptions is ordered to provide all placement services and required reports. Matter is continued to the appearance calendar of December the 1st, 1986, *1035 for judicial review and report from the Department of Children's Services. [¶] Now, the matter should be referred to the Department of Adoptions. However, out of an abundance of caution, I am going to keep the case in here and get a three-month report.... [¶] But I would be inclined to put the matter over after sending it to the Department of Adoptions for approximately three months or so and get a report. And have specific visitation [between Valerie and her child].... [¶] It seems to me that until the adoption court terminates the mother's rights, that visitation should continue...."
The court went on to make arrangements for another psychiatric evaluation of the situation, a hearing date for further report was scheduled for September 3, 1986, and provision was made for specified hours, times and places for visitation of Debra by her mother, since problems had arisen in that area. Addressing the mother, the court stated: "Now, this is the thing. Let me make clear that this is your last chance. So if you  because the case has been sent out for adoption now, your attitude is going to be critical. The reason I say that is that the case is out for adoption. Once you hear the word adoption, it seems to me if you are ever going to get your act together, so to speak, you do it now."
The mother took the appeal "from the Judgment and Order of this Court ... referring the matter to the Department of Adoptions for adoption planning ... on June 2, 1986" on the very same date. The record before us does not tell us what has transpired in the court below concerning this matter since the appeal was taken.
On October 15, 1986, this court considered Valerie's request for appointed counsel; Valerie declared that she was unemployed, without any resources, and living with some people in La Puente. This represented another change in her living arrangements since the permanency planning hearing. This court ordered the appointment of counsel for Valerie.
On appeal, Valerie's counsel essentially argued that there was insufficient evidence to justify the referral of Debra to the Department of Adoptions and that the court had failed to make certain required findings and determinations before making the order of reference. Respondent County argues here that the June 2, 1986 order was not a final judgment in this matter, and hence a nonappealable order, and that the appeal was premature.
We agree.

*1036 DISCUSSION

I.
We consider, first, principles which govern all appellate review. Code of Civil Procedure section 904.1 provides, in pertinent part, that "An appeal may be taken from a superior court in the following cases: (a) From a judgment, except (1) an interlocutory judgment ..." As Witkin explains, "the intent ... is to codify the final judgment rule, or rule of one final judgment, a fundamental principle of appellate practice in the United States. The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, p. 67.) (Italics in original.)
With respect to juvenile court proceedings, Welfare and Institutions Code sections 395 and 800 specify appeal rights. (Section 800 concerns the rights of those minors coming within sections 601 or 602 of the Welfare and Institutions Code, and does not concern us here.) Section 395, which applies to dependent children such as Debra, provides, in pertinent part, that "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; ..." (Italics added; this section was enacted in 1976, and was recently amended to include provisions for preparation of the record on appeal.)
Generally, the courts have interpreted section 395 as rendering most juvenile courts rulings appealable. In Matter of Shannon W. (1977) 69 Cal. App.3d 956 [138 Cal. Rptr. 432], the Court of Appeal quoted with approval In re Corey (1964) 230 Cal. App.2d 813, 822 [41 Cal. Rptr. p. 379], that "`it was the legislative intent to make appealable any order of a juvenile court after judgment which affects the substantial rights of the juvenile....'" (Id., at p. 961.)
A juvenile court order declaring a child to be a ward has long been regarded as appealable (In re Corey, supra, 230 Cal. App.2d 813), and it has been said that "[a]n order after judgment in a proceeding to declare a minor a dependent child or ward of the court is appealable." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 105, p. 125.)
It should be noted, however, that Matter of Shannon W. concerned, primarily, the court's determinations as the result of a Civil Code section 232 hearing, which had resulted in the termination of the relationship between the mother and her children. Thus, the court was not confronted *1037 directly and solely with the issue of the appealability of postjudgment rulings in dependent child cases. That issue was addressed in In re Candy S. (1985) 176 Cal. App.3d 329 [222 Cal. Rptr. 43] and In re Lisa M. (1986) 177 Cal. App.3d 915 [225 Cal. Rptr. 7], decisions which held that mere referral of a dependent child for adoptive planning and the possible initiation of Civil Code section 232 proceedings was insufficient to aggrieve anyone, and did not constitute an appealable order. In a recent decision, another Court of Appeal had determined, in In re Joshua S. (1986) 186 Cal. App.3d 147 [230 Cal. Rptr. 437], that In re Candy S. was incorrectly decided, and that referring a dependent child for adoptive planning pursuant to Welfare and Institutions Code section 366.25, was an appealable order, as an order made after judgment. The court further reasoned that such an order did affect the substantial rights of the child because after an adoptive reference the juvenile court could, at its discretion, discontinue efforts to reunify the child or children involved with the natural parent or parents.

II.
We are, therefore, mindful of the previous interpretation of sections 395 and 800, as establishing liberality of appeal in juvenile matters. We observe, however, that section 395 itself speaks of a final judgment, while making orders thereafter appealable as well, a somewhat ambiguous circumstance.
Section 395 should be interpreted to be in harmony, to the extent possible, with basic appellate principles such as the one final judgment rule. It is true that where courts are asked to make rulings on issues as subject to change as child custody, it is usually impractical to apply the one final judgment rule to avoid "piecemeal" disposition since such matters may continue to require court supervision for an extended period of time, during which time circumstances may substantially change in terms of a child or children's welfare. As we shall discuss, however, the reference of a dependent child for adoptive planning is not only interlocutory in nature but differs from ordinary custody determinations because it is directed toward a hopefully permanent, fixed change in status for the dependent child in question.
In our view, the reasoning of In re Candy S. has considerable merit, in that it emphasizes the necessity for finality in a judgment or order before that judgment or order comes before an appellate court for review. Not only does the general appellate rule reflect the need to avoid piecemeal litigation and to practice judicial economy, there is another compelling reason for limiting the appealability of orders following a permanency planning hearing in the juvenile court.
In 1982, the Legislature enacted a statutory scheme to deal with the "red tape" and delays that cause a dependent child like Debra to live in limbo, *1038 so to speak, while a solution is sought for their care. Debra has been a dependent since she was approximately a year old; she is now five years old, and no solution has been achieved; she is exactly the type of child the Legislature has sought to assist and protect. In enacting section 366.25 of the Welfare and Institutions Code, the Legislature expressed its preference for "stable, permanent homes for children" as opposed to foster care placements and other potentially temporary provisions for care given to dependent children. The inclusion in the section of carefully prescribed time periods to report and review of the living situation of dependent children support the conclusion that the Legislature is concerned with the early adoptability of such children, and cognizant that the passage of time operates to deprive such children of their chance in this regard.
Recognition that the Legislature continues, on behalf of dependent children, to press for as speedy a resolution of their care problems as possible, has been expressed by the California Supreme Court. In the concurring opinion in In re Elise K. (1982) 33 Cal.3d 138 [187 Cal. Rptr. 483, 654 P.2d 253], it was said that "adoptability has once again been revealed to be of critical concern to the Legislature in the area of termination of parental rights." (Id., at p. 148.) That case involved a 15-year-old girl for whom time ran out before any effective permanent plan could be made. And in In re Laura F. (1983) 33 Cal.3d 826, 832, 833, footnote 7[191 Cal. Rptr. 464, 662 P.2d 922], section 366.25 was described as a legislative effort seeking to limit the time a child is in foster care. (See also, In re Mark V. (1986) 177 Cal.App 3d 754, 761 [225 Cal. Rptr. 460].)
We turn now to the specific situation presented in the case before us. As the statement of the juvenile court judge indicated, the reference of Debra M. for adoptive planning and for the possible filing of a Civil Code section 232 action was couched in terms of intermediacy rather than finality. The fact is that Debra has been a dependent child for more than four years and still lives in a home where the caretakers have rejected the idea of her living with them on a permanent basis. Her mother, now approximately 25 or 26 years of age, has shown little evidence that she currently can provide anything for Debra except many promises and occasional visits. Expressions of love and concern do not equate to the day to day care and devotion the average parent expends on behalf of children. The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it.
The Legislature has expressed increasing concern with the perceived and accurate reality that time is of the essence in offering permanent planning for dependent children. We do not think the legislative intent and purpose *1039 is best served by rendering appealable, as an order after judgment, an interim ruling merely referring a dependent child for adoptive planning.
The court addressed this child's mother with the observation that time was running out for her, in terms of her obtaining the stability and purposefulness required to raise her daughter, Debra. It is also running out for Debra. Efforts were continued to achieve reunification, if that is possible in this case, by referral for a new psychiatric report, by a direction to the mother to participate in counselling, and by a provision for specific visitation rights to the mother. As we have stated, we do not know the results of these continuing efforts by the juvenile court to encourage a solid parental bonding between Valerie and Debra. (1) We conclude, however, that the reference for adoptive planning was not a final judgment from which appeal may be taken because it was essentially interlocutory in nature. A parent may, of course, appeal from the adverse outcome of a section 232 hearing, a hearing resulting in a final judgment. Such an appeal no doubt would involve the same issues which would arise along the procedural path; at that point, the adequacy of the evidence and the trial court's determinations would be more suitably reviewed by this court.
Our ruling reflects the legislative concern with the passage of valuable time in making permanent plans for dependent children and does not preclude aggrieved parties from seeking ultimate judicial review. It merely limits the amount of obstructional and purposeless litigation that so often accompanies these matters. The appeal is hereby dismissed.

DISPOSITION.
Appeal dismissed.
Lucas, J., and Devich, J., concurred.
A petition for a rehearing was denied March 17, 1987, and appellant's petition for review by the Supreme Court was denied May 14, 1987.
NOTES
[1] This statute, of fairly recent origin (added by Stats. 1982, ch. 978), has undergone considerable amendment since enactment but basically it provides, in pertinent part, as follows: "(a) In order to provide stable, permanent homes for children, a court shall, if the minor cannot be returned home pursuant to subdivision (e) of Section 366.2, conduct a permanency planning hearing to make a determination regarding the future status of the minor no later than 12 months after the original dispositional hearing in which the child was removed from the custody of his or her parent, parents, or guardians, and in no case later than 18 months from the time of the minor's original placement ... and periodically, but no less frequently than once each 18 months, thereafter during the continuation of foster care...."
[2] Section 366.25 provides, in pertinent part, that at a permanency planning hearing, "the court shall first determine... whether the minor should be returned to his or her parent or guardian... (d) If the court determines that the minor cannot be returned to the physical custody of his or her parent or guardian and that there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor. In order to enable the minor to obtain a permanent home the court shall make the following determinations and orders: (1) If the court finds that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code...." (The action pursuant to Civil Code section 232, severing the natural parental bond, must be undertaken before a child can be adopted.)