Filed 7/15/13  In re Y.H. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Y. H., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B245498 (Super. Ct. No. J068599) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. R.O., Defendant and Appellant. | |

   R.O. appeals from a November 21, 2012 order terminating parental rights and freeing her daughter Y.H. for adoption.  (Welf. & Inst. Code, § 366.26.)[1] Appellant contends that the trial court erred in denying her section 388 petition for reunification services and that the parent-child beneficial relationship exception precludes Y.H.'s adoption.  (§§ 366.26, subd. (c)(1)(B)(i)).)  We affirm.

---

[1] All statutory references are to the Welfare & Institutions Code.

1

*Facts and Procedural History*

On November 16, 2011, San Bernardino County Human Services Agency detained seven- year-old Y.H. after she was sexually abused by appellant's live-in boyfriend, Gabriel M.  Gabriel M. was previously married to appellant and physically abused Y.H.'s half-siblings who were removed and adopted in 2002.  After Gabriel M. was sentenced to state prison, appellant became addicted to drugs and had a two-year relationship with a drug dealer (Roberto G.) who fathered Y.H.  Appellant met R.H. who signed Y.H.'s birth certificate and fathered appellant's next child, Angel H.

When Gabriel M. was released from prison in 2011, appellant took Angel and Y.H. to live with him.  Gabriel M. abused Angel and had appellant send the infant away to live with the maternal grandmother.  Appellant worked a swing shift job and left Y.H. in Gabriel M.'s exclusive care.  Gabriel M. called Y.H. "Pig," "Stupid" and other derogatory names, physically abused the child, and constantly told appellant to hit and discipline Y.H. more.

On November 16, 2011, Y.H. reported that Gabriel M. had touched her vagina, sodomized her, and made her touch his penis.  Y.H. was detained and placed in a foster home.  At the jurisdiction/disposition hearing, appellant submitted on the first amended original petition for failure to protect (§ 300, subd. (b)), sexual abuse (§ 300, subd. (d)), failure to support (§300, subd. (g)), and sibling abuse (§ 300, subd. (j)).  The trial court sustained the petition, declared Y.H. a dependent of the court, and transferred the case to Ventura County where appellant was currently living.  Ventura County Human Services Agency (HSA) placed Y.H. in a foster home and reported that Y.H. was adjusting well but struggling with the past emotional and sexual abuse.

At the May 29, 2012 disposition hearing, appellant agreed that the trial court could decide the case.  The trial court bypassed reunification services

2

(§ 361.5, subd. (b)(11) based on appellant's failure to participate in services and reunify with Y.H.'s half-siblings when they were removed and adopted in 2002.[2] The trial court continued Y.H.'s foster care, ordered supervised visits, and set the matter for a section 366.26 permanent placement hearing.

On July 16, 2012, HSA reported that appellant had moved to Pasadena to live with a man she met on Facebook. Appellant missed a month of visits, causing Y.H. to become emotionally unstable and ask questions about the new boyfriend and appellant's ability to protect her.

*Section 388 Petition for Services*

Appellant filed a section 388 petition for reunification services [JV-180] two weeks before the section 366.26 hearing,. The petition stated that appellant was receiving counseling and therapy and "is actively engaged in treatment addressing the impact of her daughter's sexual abuse." Appellant argues that the trial court had a statutory duty to either deny the petition outright or conduct an evidentiary hearing. (Cal. Rules of Ct., rule 5.570(f); see *In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) Instead, the court signed a JV-183 order, continued the matter for hearing, and heard argument on whether the petition made a threshold showing of changed circumstances.[3] Appellant claims that it was due process violation but agreed to the procedure and forfeited the alleged error. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1080.) (

---

[2] The whereabouts of the alleged father, Roberto G., was unknown as was R.H.'s ability and willingness to parent Y.H.

[3] The JV-183 form states: "The court orders a hearing on the form JV-180 request because the best interest of the child may be promoted by the request." The form does not specify whether the court was ordering a full evidentiary hearing or a prima facie hearing as occurred here. Although there was no prejudice to appellant, the better practice would be to indicate on the JV-183 form which type of hearing is being ordered.

The trial court stated that the JV-183 form "is really misleading. It does not really say what you're setting it for, but I believe we talked about this one when this was continued. We talked about how we would first argue the prima facie case on the 388 [petition]. . . . [Appellant] is requesting that since services were bypassed[,] . . . that she be offered six months of reunification [services]. So I think the burden then [is] with [appellant]."

Appellant's attorney responded: "[T]he moving papers speak for themselves. I believe that mother has addressed all of the concerns originally raised during the jurisdiction and disposition hearing. That is to say she's involved in therapy and the therap[y] involves subjects dealing with sexual abuse, sexual perpetrators. Mother is also involved in parenting classes [that] . . . touch[] upon the same subjects. Our papers point to the fact that mother has maintained regular visits with the child. And I believe that by itself presents a prima facie showing."

The trial court denied the petition because it failed to make a prima facie showing of changed circumstances or new evidence and that reunification services were in Y.H.'s best interests. (§ 388, subds. (a)-(b); *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) Appellant claims that she was entitled to an evidentiary hearing because the court indicated, on the JV-183 form, that it would hold a hearing. By setting a hearing, the trial court gave appellant the opportunity to submit additional documents and argue the merits of the petition. The court's manner of proceeding on the petition comports with due process. (*In re C.J.W., supra,* 157 Cal.App.4th at pp. 1080-1081 [hearing complied with due process where court received written evidence and heard argument]; cf. *In re Lesly G., supra,* 162 Cal.App.4th at p. 915 [due process violated by not holding a hearing or allowing counsel to argue merits of section 388 petition after prima facie showing made].)

To prevail on a section 388, the moving party must establish that new evidence or changed circumstances exist and that the proposed order would promote

4

the best interests of the child. (§ 388, subds. (a)-(b): *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642.)  Unless the moving party makes a prima facie showing of both elements, the petition may be denied without an evidentiary hearing.  (*Ibid.*)

Services were bypassed because appellant had a history of engaging in abusive relationships with men that resulted in the removal of the half-siblings and endangered the safety and well being of Y.H.  Gabriel M. previously assaulted appellant with a deadly weapon and physically abused the older children, yet appellant left Y.H. in his care exposing the seven-year-old to extreme sexual abuse.[4]  After Y.H. was placed in foster care, appellant started a new relationship with a man that she met on Facebook.  Appellant moved to Pasadena to be with the new boyfriend, missed scheduled visits, and did not return phone calls.

The section 388 petition states that appellant completed a parenting class and was seeing a psychotherapist, but that is not a change of circumstances.  The petition includes a May 21, 2012 letter from a licensed therapist stating that she saw appellant once.  An October 10, 2012 letter from a psychotherapist states that appellant is focusing on developing coping skills to manage anxiety and sadness  and that appellant "does not appear to pose any direct risk to her daughter."

The petition also states that appellant is beginning to focus on domestic violence issues after 20 years of abusive male relationships,  but that is not new evidence.  Appellant received a year of domestic violence counseling and 12 weeks of

---

[4] Appellant grew up with Gabriel M. and knew he was violent.  Appellant told the case worker that Gabriel M. murdered someone when he was 12 years old, that Gabriel M. was in and out of prison from 1999 to 2011, that he was in prison from 2001 to 2007 for assaulting a police officer with a deadly weapon, and that he used drugs all the time, including heroin.  The half-siblings (ages five, three, and three months) were removed in 1999 after Gabriel M. "spanked" the two older children with a belt, inflicting bruises all over their bodies.   When appellant reunited with Gabriel M. in 2011, he verbally and physically abused appellant  and physically and sexually abused Y.H.

parenting classes when the half-siblings were abused by Gabriel M., removed, and adopted.

Appellant's recent participation in services reflect changing, not changed, circumstances. (See e.g., *In re Casey D., supra,* 70 Cal.App.4th at p. 49; *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1451.) Appellant continues to choose men over her children. HSA reported that appellant "has demonstrated over and over that she puts her own needs ahead of the children's needs. [Appellant] demonstrated this more recently when she left to Pasadena to be close to her new boyfriend and far away from her child." [5]

The trial court did not abuse its discretion in denying the section 388 petition for services. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316.) A section 388 "petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.]" (*In re Casey D., supra,* 70 Cal.App.4th at p. 47.)

*Adoptability*

Appellant argues that the evidence does not support the finding that Y.H. is adoptable. Y.H. adjusted well to foster care placement, has no development delays, and is doing well in school and therapy. Y.H. has lived with her foster parents for seven months and is closely bonded to a loving family that is committed to adopting her. "[A] prospective adoptive parent's willingness to adopt generally indicates the child is likely to be adopted within a reasonable time either by the prospective

---

[5] Appellant and the boyfriend visited the maternal grandmother and Angel (Y.H.'s youngest sibling) in June 2012, The maternal grandmother reported that the boyfriend was "very pushy and manipulative" and that he threatened to take Angel back to Pasadena to live with him and appellant.

6

adoptive parent *or by some other family* [Citation.]." (*In re Sarah M.*(1994) 22 Cal.App.4th 1642, 1649-1650.)

Appellant argues that Y.H. is not adoptable because she is still attached to appellant and fears men. Y.H., however, is bonded to male members in the foster family and calls her foster father "Daddy." Out of loyalty, Y.H. has stated that she would like to live with appellant and, if that is not possible, be adopted by her foster parents. The evidence shows that Y.H. is an intelligent and beautiful child, has a friendly personality, and that other prospective adoptive parents are waiting for the opportunity to adopt a child with Y.H.'s background. The trial court did not err in finding that Y.H. is adoptable and is likely to be adopted in the near future. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1312-1313; *In re Sarah M., supra,* 22 Cal.App.4th at pp. 1649-1651.)

*Parent-Child Beneficial Relationship*

Appellant argues that the beneficial parent-child relationship exception precludes adoption. (§ 366.26, subd. (c)(1)(B)(i).) "Because a parent's claim to . . . an exemption [to termination of parent rights) is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will chose a permanent plan other than adoption. [Citation.]" (*In re Scott B*. (2010) 188 Cal.App.4th 452, 469.) To establish the beneficial relationship exception, appellant must prove that she maintained regular visitation and contact with Y.H., and that the benefits of continuing the parent-child relationship outweigh the benefits of adoption. (See *In re C.F* (2011) 193 Cal.App.4th 549, 554 [sporadic visitation is not enough]; *In re Marcelo B., supra,* 209 Cal.App.4th at p. 643 ["frequent and loving contact" not sufficient to establish beneficial parental relationship].)

The first prong was not satisfied because appellant has not maintained regular visits. After appellant moved to Pasadena to live with the new boyfriend, appellant missed six supervised visits and had no contact with Y.H. from May 18,

7

2012 to August 3, 2012. Trial counsel warned appellant that it "look[ed] bad" and not to miss future visits, but appellant missed two more visits. Y.H. regressed, suffered flashbacks, and became emotionally unstable. An HSA case aide reported that Y.H. had a difficult time resuming visits and that Y.H.'s behavior and expressions during visits "appear conflicting." Y.H. was anxious before visits, and acted up and was defiant and angry a day or two after visits. Y.H. expressed concerns about being kept safe and asked a lot of questions about appellant's new boyfriend.

With respect to the second prong, appellant has not shown that severing the parent-child relationship would deprive Y.H. "of a substantial, positive emotional attachment such that the child would be greatly harmed" if parental rights were terminated. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Appellant failed to progress beyond supervised visits and had to be constantly coached and redirected to engage in appropriate behavior. At an October 9, 2012 supervised visit, appellant was very emotional, talked about the upcoming court hearing, and talked about a little girl on the news who was kidnapped, raped, murdered, and dismembered. The visit scared Y.H., causing her to suffer flash backs and anxiety attacks. Y.H. cried over the weekend, asking her foster mother about appellant's boyfriend and appellant's ability to protect her.

Y.H.'s therapist reported that Y.H. was stable when appellant stopped visiting. When the visits resumed, Y.H. had terrible nightmares and flashbacks, clinged to her foster parents, and was afraid to be alone. At a September 19, 2012 evaluation, Y.H said that she felt safe and secure in her foster care placement and was afraid of returning to appellant's care and being hurt again.

The trial court reasonably concluded that appellant's relationship with Y.H. did not outweigh the permanency and stability of an adoptive placement that Y.H. so badly needs. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 468.) "The reality is that childhood is brief; it does not 'wait until a parent rehabilitates himself or herself.

8

The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____


Aida Aslanian, under appointment by the Court of Appeal, for Appellant.


Leroy Smith, County Counel, County of Ventura and Alison L. Harris, Assistant County Counsel, for Respondent.