Filed 6/23/14  In re Edgar F. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re EDGAR F., JAMIE F., and ELIZABETH F., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B253277<br>(Super. Ct. No. J063046)<br>(Super. Ct. No. J069391)<br>(Super. Ct. No. J069392)<br>(Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>DONNA S.,<br><br>        Respondent and Appellant. | |

Donna S. (mother) appeals the denial of her petition to reinstate family services (Welf. & Inst. Code, § 388)[1] and appeals from a December 10, 2013 order terminating parental rights and freeing her children Edgar F., Jamie F., and Elizabeth F. for adoption.  (§ 366.26.)  We affirm.

---

[1] All statutory references are to the Welfare & Institutions Code.

1

*Facts & Procedural History*

On May 19, 2013, Ventura County Human Services Agency (HSA) detained Edgar F. (age 10),  Jamie F. (age 8), and Elizabeth F. (age 3) after drug paraphernalia and a bullet were found in the motel room where the children and mother were living.  Mother was arrested for child abuse, being under the influence of a controlled substance, and possession of narcotics paraphernalia.  HSA filed a petition for failure to protect (§ 300, subd. (b)) and no provision for support (§ 300, subd. (g)).  It was alleged that the whereabouts of the children's father was unknown  and that the father had a lengthy criminal history with arrests for murder, robbery, substance abuse, car theft, possession of a firearm, vandalism, and battery on a police officer.

The detention report stated that mother had an extensive history of substance abuse and that a prior dependency action was filed in 2002 after the oldest child, Edgar, tested positive for marijuana at birth.  Mother was offered family maintenance services but continued to abuse methamphetamine and marijuana.  In 2005, mother was arrested for drug use, completed a drug court program, and resumed using methamphetamine after moving to Tijuana, Mexico with the father and children.  There were several child abuse referrals based on mother's substance abuse and reports that mother and father were fighting and using drugs.  Edgar told the case worker that his parents were mean when they smoked drugs and would hit the children.

At the May 21, 2013 jurisdiction/disposition hearing, the trial court bypassed reunification services based on mother's chronic drug abuse and uncontroverted evidence that mother resisted two prior court ordered treatments for substance abuse.  (§361.5, subd.  (b)(13).)  The matter was set for a permanent placement hearing.  (§ 366.26.)

Before the section 366.26 hearing, HSA reported that the children were living with the maternal aunt and bonded to the aunt who wanted to adopt.  Mother filed a section 388 petition to reinstate services which was denied for failure to make a prima facie showing of change of circumstances.  At the contested section 366.26

2

hearing, the trial court found that the children were adoptable and that mother had not met her burden of establishing the beneficial parent-child relationship exception. (§ 366.26, subd. (c)(1)(B)(i).)

*Section 388 Petition*

Mother asserts that the trial court erred in denying her petition for reunification services. The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless abuse of discretion is clearly established. (*In re Shirley K.* ( 2006) 140 Cal.App.4th 65, 71.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point, 'the focus shifts to the needs of the child for permanency and stability' . . . . [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) To prevail on a section 388 petition, the parent must establish that new or changed circumstances exist and that the proposed order would promote the best interests of the child. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642 (*In re S. J.* (2008) 167 Cal.App.4th 953, 959.) "Unless the moving party makes a prima facie showing of both elements, the petition may be denied without an evidentiary hearing. [Citation.]" (*In re Marcela B., supra* 209 Cal.App.4th at p. 642.)

The section 388 petition alleges that mother was participating in the Lighthouse Life Recovery Program which included random drug testing and a 12-step recovery program. Mother, however, was enrolled in the program before services were bypassed. There is no evidence that mother completed the program or that anything has changed. (See e.g., *In re H.S.* (2010) 188 Cal.App.4th 103, 109.) Mother has a history of drug relapses, is in the early stages of recovery, and is still addressing her substance abuse problem. (See *In re Kimberly F.* (1997) 56 Cal.App. 4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."]; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423 ["relapses are all too common for a recovering drug user"].) The section 388 petition offers "a bare scintilla of proof that [mother] was beginning to rehabilitate. But '[c]hildhood does not wait for the parent to become adequate.' [

4

Citation.]" (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.) The trial court did not abuse its discretion in denying the section 388 petition.

*Beneficial Parent-Child Relationship*

Mother argues that the trial court erred in terminating parental rights because the children will benefit from continuing the parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i).) A parent seeking to overcome the statutory preference for adoption "must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

Mother has not advanced beyond supervised visits and makes no showing that her relationship with the children is so significant and positive that the children will be greatly harmed by its termination. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Mother regularly visited the children but Edgar and Jamie were easily drawn to other activities. Following the visits, the boys were irritable, engaged in angry outbursts and tantrums, and expressed anger toward mother. The case worker reported that the children view their aunt as a "2nd mother" and are thriving in her care. Edgar said "I want to be adopted by my aunt. . . . [My] relationship with my aunt is more like a mom as she has taken care of me as a baby." Jamie also wants to be adopted.

Elizabeth is too young to voice an adoption preference but looks to aunt for comfort and support. After Elizabeth was placed with her brothers, the children supported each other and formed a strong relationship with their aunt. Although mother maintained regular contact and visitation, a parent must show more than "an emotional bond with the child, or pleasant visits. [Citation.]" (*In re Dakota H.* (2005)

5

132 Cal.App.4th 212, 229.) The evidence clearly shows that Elizabeth and her brothers need a safe and nurturing home that only adoption can provide.

Mother argues that a trial court may not terminate parental rights based on the adoptive parent's willingness to allow visitation. (See e.g., *In re C.B.* (2010) 190 Cal.App.4th 102, 128.) Visitation was briefly mentioned by trial counsel but the arguments of counsel are not evidence. The trial court made no express or implied finding that aunt's amenability to visitation was a factor in terminating parental rights. What it did find is that mother's current attempt to become drug-free "is too little too late . . . [¶] . . . [S]ome detriment does exist but does not outweigh the need for adoption . . . ."

Mother argues that she maintained long periods of sobriety, formed strong bonds with the children, and "mindfully" parented the children. When Elizabeth was detained, she had scabies and rotten teeth. The tooth decay was so severe that four front teeth had to be extracted. Edgar and Jamie suffered from temper outbursts and aggressive behavior that included kicking, throwing things, lying, destroying property, and running out of the home. The boys complained about mother's substance abuse, the domestic violence, and mother's friends. After two unsuccessful placements, the children were placed with the maternal aunt and bonded with the aunt. With therapy and aunt's loving care and support, the behavioral problems have almost disappeared.

The trial court reasonably concluded that mother's relationship with the children does not outweigh the permanency and stability of an adoptive placement that the children so badly need. (*In re Angel B.*, *supra,* 97 Cal.App.4th at p. 468.) Because a parent's claim to an exemption must be evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will chose a permanent plan other than adoption. (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.) "The reality is that childhood is brief; it does "wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the

6

child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

The judgment (order denying section 388 petition and order terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

7

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Michelle Anne Cella, under appointment by the Court of Appeal, for Appellant.

Leroy Smith, County Counsel, County of Ventura, Cynthia Krause, Assistant County Counsel, for Respondent.