Filed 9/18/14  In re Trinity M.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

<table>
<tr><td>In re TRINITY M. et al., Persons Coming Under the Juvenile Court Law.</td><td>2d Juv. No. B254697<br>(Super. Ct. No. JV50216)<br>(San Luis Obispo County)</td></tr>
<tr><td>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ELIZABETH D.,<br><br>　　Defendant and Appellant.</td><td></td></tr>
</table>

Elizabeth D. (mother) appeals from a February 14, 2014 order terminating parental rights and freeing her children, Trinity M. and Waylon M. Jr., for adoption. (Welf. & Inst. Code, § 366.26.)[1]  Mother contends that the beneficial parent-child relationship exception precludes the children's adoption.  (§  366.26, subd. (c)(1)(B)(i).) We affirm.

*Procedural History*

On August 15, 2011, San Luis Obispo County Department of Social Services (DSS) filed a dependency petition alleging that mother was abusing drugs and neglecting Trinity (age 8) and Waylon Jr. (age 2).  (§ 300, subd. (b).)   When the social worker visited the family, mother was under the influence of drugs, the electricity was

_____

[1] All statutory references are to the Welfare and Institutions Code.

turned off, and the children were unkempt and wearing dirty clothes. DSS placed the children in protective custody based on reports that mother and the children's father (Waylon M. Sr.) were using methamphetamine. The parents had a long history of child neglect, physical and emotional abuse, and not providing for Waylon Jr.'s (age two) medical needs.

The trial court sustained the petition on December 14, 2011, and ordered reunification services. Two year old Waylon Jr. was returned to appellant's care. Trinity was placed in foster care.

*Section 388 Petition*

In April 2012, DSS filed a section 388 petition to reunite the family after the parents tested clean for drugs. On April 11, 2012, the trial court returned Trinity to mother's care and continued family maintenance services.

*Section 387 Petition*

On December 19, 2012, the trial court granted a section 387 petition to detain the children after the parents suffered a drug relapse and lost their housing. Before the detention, Trinity missed two weeks of school and reported intense arguing at home. Trinity's stepbrother, David Y., was physically abused by Waylon Sr. Trinity and David told the social worker that Waylon Sr. was using drugs and had a briefcase containing needles, straws, and drug paraphernalia.

After the children were placed with their maternal aunt and uncle, father (Waylon Sr.) assaulted mother, was convicted of battery, and was involved in a physical altercation with mother's boyfriend. DSS reported that mother was homeless, was pregnant and unemployed, and had an on-going relationship with Scott B., who has a significant criminal history for substance abuse related offenses.

On September 25, 2013, the trial court terminated services and set the matter for a section 366.26 hearing. At the section 366.26 hearing, the trial court found that the children were adoptable and terminated parental rights.

*Beneficial Parent-Child Relationship*

Appellant argues that the trial court erred in terminating parental rights because the children will benefit from continuing the parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i).) "If the court finds that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" ( *In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The parent-child relationship exception precludes adoption where (1) the parent has maintained regular visitation and contact with the child, and (2) the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) In deciding whether the parent-child beneficial relationship applies, "the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Historically, our courts have applied the substantial evidence standard of review when the trial court finds that the beneficial parent-child relationship does not apply. (*Id.*, at p. 576.) In *In re Bailey J.* (2010) 189 Cal.App.4th 1308, the Court of Appeal applied the substantial evidence standard to the trial court's determination whether a beneficial relationship exists, and the abuse of discretion standard to the court's determination whether the relationship is so important that it compels a plan other than adoption. (*Id.*, at pp. 1314-1315; see Cont.Ed.Bar ( thed. 2013) Cal. Juvenile Dependency Practice, § 8.38A, pp. 663-664;, *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re J.C* (2014) 226 Cal.App.4th 503, 530-531.) Here, we affirm under either standard.

Appellant claims that beneficial relationship exception was satisfied because she maintained consistent and regular visitation with the children. (§ 336.26, subd. (c)(1)(B)(i).) Although mother met the visitation prong, the evidence shows that the child-parent relationship is qualitatively insufficient and does not outweigh the benefit of adoption. (§ 336.26, subd. (c)(1)(B)(i); see e.g., *In re J.C., supra,* 226

3

Cal.App.4th at p. 532.)  "Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] . . .'  Evidence that a parent has maintained ' "frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' [Citation.]" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.)  Only in the "extraordinary case" can a parent establish the exception because the permanent plan hearing occurs after the court has repeatedly found the parent unable to meet the child's needs.  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

Mother argues that the children spent the majority of their lives in her care and are emotionally attached to her.  (See e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 689.)  But during that time, the children were neglected.  Mother failed to provide medical care for Waylon Jr. who suffered from impetigo, eczema, cellulitis, and a staph infection.  When Waylon Jr. was detained and placed in protective custody, he had bruises on his forehead and back, open sores, and large clusters of infection and inflammation on his lower extremities and abdomen.

After Waylon Jr. was placed with the maternal aunt, DSS reported that he was prone to temper tantrums and wetting his pants.   The tantrums diminished when visitation was decreased.  Appellant visited Waylon Jr. once a week but the visits did not progress beyond supervised visits and were later reduced to one hour a month.

Trinity was also neglected.  School officials reported that Trinity was filthy and unkempt, could not focus in class or complete her homework, and that the school had to buy her shoes.  Trinity complained that appellant's boyfriend was present at scheduled visits and that appellant brought a dog to the visits.  Visitation was changed to supervised visits after appellant violated a mediation agreement that no other adults would be present during visits.  The social worker noted that appellant was more interested in maintaining a relationship with her boyfriend than providing the children a safe home or spending time alone with them.

4

Although Trinity wants to be near mother, there is no evidence that the parent-child relationship is so significant that Trinity will be greatly harmed by its termination. (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.) During the period mother had custody, the children were subjected to an environment of abuse, neglect, domestic violence, and illegal drugs. Little has changed. Trinity has been in dependency since August 2011, reunified with mother after seven months of foster care, and was placed in protective custody a second time after her parents suffered a drug relapse and engaged in domestic violence. Despite 24 months of services, appellant is homeless, unemployed, associates with men who have a history of drug and alcohol use, and is still addressing substance abuse, domestic violence, and mental health issues.

Trinity has formed a strong relationship with her aunt, is thriving under her care, and has greatly improved at school. Shilpa Patel, a Court Appointed Special Advocate, reported that Trinity has less and less of a connection with her parents and wants to remain in her aunt's home which she considers her permanent home. The social worker made a similar assessment: "Trinity and Waylon [Jr.] have made incredible progress since placement with their maternal Aunt and Uncle. They both want to live in that home and are observably bonded to [the family.] They are happy and thriving in the home as they can count on their day to day needs being met."

The trial court reasonably concluded that mother's relationship with the children does not outweigh the permanency and stability of an adoptive placement that the children so badly need. (*In re Angel B.* (2002) 97 Cal. App.4th 454, 468.) "The reality is that childhood is brief; it does "wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.) Mother makes no showing that the trial court erred in terminating parental rights and freeing the children for adoption. (*In re K.P. , supra,* 203 Cal.App.4th at pp. 622-623; *In re Autumn H., supra,* 27 Cal.App.4th at p. 577.)

The judgment (order terminating parental rights) is affirmed.

5

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Michelle L. Jarvis, under appointment by the Court of Appeal, for Appellant.

Rita L. Neal, County Counsel, County of San Luis Obispo, and Susan Hoffman, Deputy County Counsel, for Respondent.