Filed 5/18/16  In re Norma H. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re NORMA H., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B267787<br>(Super. Ct. No. J070452)<br>(Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAMON H. and SYLVIA H.,<br><br>    Defendants and Appellants. | |

Ramon H. (father) and Sylvia H. (mother), the biological parents of Norma H. appeal from a juvenile court order terminating their parental rights to their five-year-old daughter.  (Welf. & Inst. Code, § 366.26.)[1]  Appellants contend that the trial court erred in finding that the beneficial parent-child relationship exception does not apply.  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

*Facts and Procedural History*

On the evening of April 10, 2015, father was arrested for driving under the influence of alcohol with Norma in the car.  Drenched in beer, father was driving with no headlights and had open containers of beer in the car.  The officer found mother in the

---

[1] All statutory references are to the Welfare & Institutions Code unless otherwise stated.

back seat with four-year-old Norma who was scared and crying. Mother was under the influence of a controlled substance and tested positive for methamphetamine. The maternal grandmother (Ofelia O.) was called and took custody of Norma as appellants were being arrested.

On May 4, 2015, Ventura County Human Services Agency (HSA) filed a petition for failure to protect (§ 300, subd. (b)) and abuse of a sibling (§ 300, subd. (j)). The petition alleged that mother's parental rights were terminated with respect to Norma's half-sister after the sibling tested positive for amphetamine and opiates at birth. HSA reported that appellants had a long history of polysubstance abuse and domestic violence. Father was currently using methamphetamine and heroin, had a 30 year drug history, and had not completed court-ordered drug treatment.

Appellants did not oppose the petition or appear at the June 3, 2015 jurisdiction/disposition hearing. The trial court sustained the petition and bypassed services based on father's chronic drug use and history of resisting court-ordered drug treatment.[2] (§ 361.5, subd. (b)(13).) Services were bypassed for mother for the same reasons and on the ground that parental rights were previously terminated with respect to Norma's half-sister. (§ 361.5, subd. (b)(10).)

At the section 366.26 hearing, HSA recommended that parental rights be terminated and that Norma be freed for adoption. The trial court found that the parent-child beneficial relationship exception did not apply and terminated parental rights.

*Beneficial Parent-Child Relationship*

Appellant argues that the trial court erred in finding that the benefits of continuing the parent-child relationship do not outweigh the benefits of adoption. (See *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) We review for substantial evidence and determine whether the trial court abused its discretion. (*Ibid.*) "Because a

---

[2] Father filed a petition for extraordinary writ relief which was denied on September 16, 2015 for failure to comply with California Rules of Court, rule 8.452. (B264696.)

2

parent's claim to such an exception is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will choose a permanent plan other than adoption. [Citation.]" (*In re Scott B.* ( 2010) 188 Cal.App.4th 452, 469.)

The parent-child relationship exception requires a showing that appellants maintained regular contact with Norma. (§ 366.26, subd. (c)( 1)(B)(i).) Once that is established, appellants must demonstrate that Norma will benefit from continuing the relationship and that it outweighs the benefits of adoption. *(In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "'The exception applies only where the [trial] court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent.'" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) Appellant must show that severing the parent-child relationship would deprive Norma of a substantial, positive emotional attachment such that the child would be greatly harmed. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) In assessing whether the parental relationship is important and beneficial, the trial court considers (1) the child's age, (2) the portion of the child's life spent in the parents' custody, (3) the positive and negative effect of interaction between the parents and the child, and (4) the child's particular needs. (*Id.*, at p. 467.)

Norma lived with appellants for the first four years of her life but it was in a home plagued with drug abuse and domestic violence. The drug addiction and parenting issues have not been resolved. Appellants are in their 40s and suffer from heroin and methamphetamine addictions dating back to their teens. They have never completed a drug treatment program and their drug addiction endangers Norma's welfare and safety. Mother's drug addiction is so profound that it resulted in the termination of parental rights with respect to Norma's half-sister. Despite the loss of one child, mother continues to use drugs. (See e.g., *In re Angel B., supra*, 97 Cal.App.4th at p. 463.)

Appellants also have a lengthy criminal history dating back to 1993 with two arrests in 2015. A month before the section 366.26 hearing, appellants pled guilty to

3

being under the influence of a controlled substance and refused to participate in Proposition 36 drug treatment. (Pen Code, § 1210.1.) The trial court was troubled about the drug relapse: "[I]f you knew [the section 366.26 hearing] was coming, why were you still using? I just don't understand that."

Domestic violence is an ongoing problem, fueled by drugs. Appellants were verbally and physically abusive before Norma was detained. Norma told the social worker that "she sees her parents yell at each other and it makes her very sad." After Norma was removed, appellants quarreled at supervised visits. On one occasion, Norma shook her finger at appellants, saying "no fight, no fight again." On July 8, 2015, the social worker split the supervised visits so that appellants could not quarrel in front of Norma.

Citing *In re Scott B.* (2010) 188 Cal.App.4th 452, appellants argue that it would harm Norma if the parent-child relationship is severed. *In re Scott* involved a special needs child with autism who was 11 years old and in foster care for two years. The child insisted on living with his mother and threatened to run away if he was adopted. (*Id.*, at p. 464.) A court-appointed special advocate opined that it was imperative that the child, if adopted, maintain contact with mother because any disruption of the parent-child relationship would harm the child. (*Id.*, at p. 465.)

Norma is much younger than the child in *In re Scott* and has no special needs or attachment to appellants. Unlike *In re* Scott, Norma has never said that she can only live with appellants or tried to run away from her care provider. Nor has any social worker, caregiver, evaluator, therapist, or court-appointed special advocate reported that adoption would be detrimental to Norma.

Appellant's citation of *In re Brandon C.* (1999) 71 Cal.App.4th 1530 is inapposite. There, the prospective adoptive parent (the boys' paternal grandmother) testified that it was not in the best interests of the boys to terminate the parent-child relationship. (*Id.*, at p. 1533.) The mother, a recovering addict, faithfully visited the boys

4

for three years and made significant advances by completing drug rehabilitation, testing negative for drugs, and obtaining stable employment and housing for many months. (*Id.*, at p. 1536.)

Appellants have not addressed their drug addiction or demonstrated that they can safely parent Norma. No one disputes that appellants have a warm and affectionate relationship with Norma but it bears no resemblance to the sort of consistent, daily nurturing that marks a parental relationship. (See e.g., *In re Derek W.* (1999) 73 Cal.App.4th 823, 827; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 229 ["parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits"].)

In *In re S.B.* (2008) 164 Cal.App.4th 289, the father complied with every aspect of his case plan, maintained his sobriety, and sought medical and psychological services. (*Id.*, at p. 293-294.) A psychologist reported that the parent-child relationship was fairly strong and there would be potential harm to the child if the relationship was terminated. (*Id.*, at p. 296.) Appellants, in contrast, made no effort to address their drug and domestic violence issues. A month before the section 366.26 hearing, they pled guilty to being under the influence of a controlled substance and refused to participate in drug treatment. The trial court was concerned because drug addiction is an intractable problem often marked by periods of sustained sobriety and relapse. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 48-49 [nine months of sobriety insufficient to warrant section 388 modification]; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety since relapse, "while commendable, was nothing new"]; *In re Angel B., supra*, 97 Cal.App.4th at p. 463 [parent's sobriety very brief compared to many years of addiction].) Renewed attempts to facilitate reunification are not in the child's best interests where the parent is a chronic drug user and has resisted prior treatment. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 200.)

5

Father argues that parental rights were terminated based on the assumption that Norma would be adopted by the maternal grandmother. He claims that the adoption plan was derailed after Norma was removed from grandmother's care.[3] The trial court terminated parental rights based on clear and convincing evidence that it is likely that Norma will be adopted. (§ 366.26, subd. (c)(1); *In re Brian P.* (2002) 99 Cal.App.4th 616, 624.) There is no requirement that the child be already placed in a preadoptive home or that a proposed adoptive parent be waiting. (*Ibid*.) "The issue of adoptability requires the court to focus on the child, and whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt. [Citations.]" (*Ibid*.)

Norma is a healthy, inquisitive child with no development or behavioral concerns. The section 366.26 report states that the maternal grandmother was ready to move forward with adoption but "should the placement fail, Norma is generally adoptable and there are other approved adoptive families available to accept a child of Norma's age, ethnicity, parental background and similar individual traits."

Based on Norma's age and appellants' on-going substance abuse problems, the trial court reasonably concluded that the benefits of continuing the parent-child relationship did not outweigh the permanency and stability of an adoptive placement that Norma so badly needs. (*In re Angel B., supra*, 97 Cal.App.4th at p. 468.) It is "a 'quintessentially' discretionary decision" but not a close call. (*In re Bailey J.¸ supra*, 189 Cal.App.4th at p. 1315.) Adoption is the preferred permanent plan and is clearly in Norma's best interests. "The reality is that childhood is brief; it does not wait while a

---

[3] After parental rights were terminated, HSA removed Norma because the child was left unsupervised with mother at the Santa Paula Hospital. Mother was acting bizarre, appeared to be under the influence, and told hospital staff that she had Norma with her and planned to "turn herself in." The maternal grandmother acknowledged that she was not supposed to leave Norma alone with mother. Norma was removed and placed in a confidential foster home.

parent rehabilitates himself or herself.  The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it."  (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

The judgment (order terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


7

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____


Maureen L. Keaney, Roni Keller, under appointment by the Court of Appeal, for Appellants.

Leroy Smith, County Counsel, County of Ventura, Joseph J. Randazzo, Assistant County Counsel, attorneys for Petitioner and Respondent.