Filed 10/30/14  In re Joseph P. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re JOSEPH P., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B255965 (Super. Ct. No. J069280) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEANN A.,<br><br>    Defendant and Appellant. | |

Deann M. (mother) appeals the juvenile court orders denying her modification petition, terminating her parental rights and establishing adoption as the permanent plan for her minor child Joseph P.**1**  (Welf. & Inst. Code, §§ 366.26, 388.) **2**  Mother contends the court abused its discretion in denying her modification petition, and erred in finding that terminating her parental rights would not be detrimental to Joseph. (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

---

**1** The court also terminated the parental rights of Joseph's father.  He is not a party to this appeal.

**2** All statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

On March 21, 2013, the Ventura County Human Services Agency (HSA) detained 11-month-old Joseph P. and his two half-siblings, seven-year-old Enrique and four-year-old Alexis. HSA took Joseph into protective custody and placed Enrique and Alexis with their father.

On March 25, 2013, HSA filed a petition as to Joseph for failure to protect (§ 300, subd. (b)) and support (§ 300, subd. (g)). The petition alleged that mother left Joseph, Enrique and Alexis at home, in the care of adults who were using marijuana in their presence. The home was in disarray. Joseph's crib was filled with blankets, clothing and pillows, and there was marijuana on a low dresser. Mother had a history of unaddressed substance abuse and mental health issues. HSA could not find Joseph's father.

On March 26, 2013, the juvenile court declared Joseph a dependent child, ordered his continued detention, and ordered HSA to begin providing reunification services to mother. The court ordered mother to refrain from using or possessing any drugs or alcohol, submit to random drug testing, and provide HSA written verification of her attendance at Alcoholics/Narcotics Anonymous (AA/NA) meetings. On April 11, 2013, mother and HSA agreed to a case plan that set a goal for her reunification with Joseph by October 22, 2013. The plan required that mother participate in mental health counseling; enroll in and complete an outpatient substance abuse treatment program; submit to random drug testing; and provide written proof of her attendance at 12-step meetings.

Mother attended the April 23, 2013, jurisdiction and disposition hearing. The juvenile court sustained the petition, ordered HSA to provide six months of reunification services to mother, and ordered mother to comply with her case plan.

In its October 7, 2013, six-month status review report, HSA recommended that the juvenile court terminate mother's reunification services and set a section 366.26 hearing to establish adoption as the permanent plan for 18-month-old Joseph. HSA reported that Joseph had been living with his maternal aunt since April 15, 2013, and was

2

appropriately attached to his maternal aunt and mother. Joseph was developmentally on track, walking, throwing a ball, following simple directions, and learning new words.

Mother enrolled in several recovery programs, but failed to complete them. She tested positive for codeine on May 10, 2013, and failed to submit to testing on two other dates. Mother missed multiple appointments with her therapist, as well as some scheduled meetings with her HSA social worker. Mother missed eight weekly visits with Joseph from mid-May through late July 2013, sometimes because she slept through her alarm or was late for the bus.

On October 7, 2013, mother appeared in juvenile court and requested a contested status review hearing. The court set the matter for a contested hearing on October 31, 2013. Mother failed to appear on October 31. The court considered the evidence submitted by HSA and found by clear and convincing evidence that she failed to comply with her case plan. The court terminated mother's reunification services, and set a section 366.26 hearing for February 24, 2014.

On February 24, 2014, mother requested a contested section 366.26 hearing. The juvenile court scheduled the matter for a contested hearing on March 20, 2014. On March 20, mother filed a section 388 petition asking the juvenile court to modify its October 31, 2013, order terminating reunification services. The petition alleged the following changed circumstances: Mother had been sober since September 2013; she recently gave birth to a daughter; and mother enrolled in alcohol and drug treatment and parenting programs on January 23, 2014. Her petition further alleged it would be in Joseph's best interests if reunification services were reinstated because Joseph was placed with mother's sister, mother would be seeing him, and with services, she could best maintain the path she was on to be a "clean, sober and healthy individual in his life"

On April 22, 2014, the juvenile court conducted a combined hearing on mother's section 388 petition and the HSA recommendation to terminate parental rights and select adoption as Joseph's permanent plan. HSA reported that Joseph was a happy, playful, healthy boy who was developmentally on track, and able to kick and throw a

3

ball, and say about 20 words.  Joseph had been living with his maternal aunt and her girlfriend since April 15, 2013.  They were "attached/bonded to him, love[d] him, . . . [saw] him as their own child," and wished to adopt him.  HSA social worker Nicole Cosgrove testified that Joseph was attached to his aunt and her girlfriend, and looked to them for comfort and support.

HSA further reported that mother gave birth to a daughter, Jazzlene, in March 2014.  HSA removed Jazzlene from mother's care, and mother was receiving reunification services in Jazzlene's case.  Mother attended regular supervised visits with Joseph and Jazzlene.  Joseph did not have any significant issues transitioning to and from the visits.  HSA located Joseph's father.  He never requested visitation.

Mother testified that she attended supervised visits with Joseph once a week.  He recognized her, called her "mom," and was always happy and laughing.

Mother also testified that on March 24, 2014, she entered Prototypes, a residential substance abuse facility, where she participated in recovery and parenting programs.  She was in the first phase of residential treatment, and anticipated being in treatment for at least five more months.  Mother testified inconsistently regarding her sobriety date.  In addition, as the juvenile court observed, mother's testimony regarding the date on which she realized she was pregnant conflicted with her earlier statements to Cosgrove.  The trial court found Cosgrove was credible.

The juvenile court denied mother's section 388 petition to reinstate services, found that Joseph was adoptable, and terminated mother's parental rights.

DISCUSSION

*Section 388 Petition*

Mother contends that the juvenile court erred by denying her section 388 petition.  We disagree.  "The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established."  (*In re Shirley K*. (2006) 140 Cal.App.4th 65, 71.)  The parent bears the burden of showing both a change of circumstances and that modification of the prior order would be in the child's best interests.  (*In re S.J.* (2008) 167

4

Cal.App.4th 953, 959.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, . . . 'the focus shifts to the needs of the child for permanency and stability' [citation] . . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

Mother claims she met her burden of showing the requisite change of circumstances because she "was in recovery." She bases that claim on her entry into residential treatment on March 27, 2014, and participation in other programs beginning on January 23, 2014. Before ruling on April 22, 2014, the juvenile court noted that mother was only in her fourth week of residential treatment, with at least five more months of treatment remaining. In 2013, mother had started several other recovery programs but failed to complete them. The court found there had not been a sufficient change of circumstances to justify changing its prior orders and denied the section 388 petition. Substantial evidence supports the court's finding. (*In re S.J., supra*, 167 Cal.App.4th at pp. 959-960.)

Mother also failed to establish that it would be in Joseph's best interest to modify the order terminating her reunification services. Following the termination of those services, the juvenile court's primary focus was upon the "'. . . needs of [Joseph] for permanency and stability' [citation] . . . ." (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) At oral argument, mother's counsel urged that Joseph's placement with his maternal aunt weighed in favor of granting the section 388 petition because he could build a future with mother and remain in his aunt's home. In juvenile court, mother's counsel had claimed there was no urgency to terminate parental rights, among other reasons, because she and Joseph would see each other anyway, while he lived with his maternal aunt. The record belies any claim that mother and Joseph would inevitably maintain contact. Mother testified she and maternal aunt did not associate with each other. In discussing their wish to adopt Joseph, the maternal aunt and her partner told HSA they planned to allow mother to have supervised contact with him if she was sober and the relationship was beneficial.

5

As mother acknowledges in her brief, Joseph had consistent and loving care in his maternal aunt's home. Mother was in the early stages of her recovery and Joseph could not wait any longer. Substantial evidence supports the trial court's finding that it was not in the best interest of Joseph to modify its prior order and "wait five to six to seven months . . . to see whether or not he [could] be . . . returned to mother's care." (*In re S.J., supra,* 167 Cal.App.4th at pp. 959-960.)

*Beneficial Relationship Exception*

Mother argues that the juvenile court erred in finding that terminating her parental rights would not be detrimental to Joseph under the parent-child beneficial relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) We disagree.

"If the court finds that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.)

The parent-child beneficial relationship exception precludes adoption where (1) the parent has maintained regular visitation and contact with the child, and (2) the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) In deciding whether the parent-child beneficial relationship exception applies, "the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Historically, our courts have applied the substantial evidence standard of review when the trial court finds that the parent-child beneficial relationship exception does not apply. (*In re Autumn H., supra,* 27 Cal.App.4th at p. 576.) In *In re Bailey J.* (2010) 189 Cal.App.4th 1308, the Court of Appeal applied the substantial evidence standard to the trial court's determination whether a beneficial relationship exists, and the abuse of discretion standard to the court's determination whether the relationship is so important that it compels a plan other than adoption. (*Id.* at pp. 1314-1315; see Cal. Juvenile Dependency Practice (Cont.Ed.Bar Annual 2013) § 8.38A, pp. 663-664; *In re*

6

*K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re J.C.* (2014) 226 Cal.App.4th 503, 530-531.) Here, we affirm under either standard.

Mother claims that she maintained consistent and regular visitation with Joseph to support the beneficial relationship exception. (§ 336.26, subd. (c)(1)(B)(i).) The evidence concerning her visitation was mixed. At times she visited him regularly. But she also missed multiple visits. Assuming that mother had proved she maintained the requisite visitation with Joseph, she failed to show that "'severing the natural parent-child relationship would deprive [Joseph] of a *substantial*, positive emotional attachment such that [he] would be *greatly* harmed. [Citations.] . . .' . . . Evidence that a parent has maintained '"frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' [Citation.]" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.) Instead, "[t]he parent must show he or she occupies a parental role in the child's life . . . ." (*In re Mary G.* (2007) 151 Cal.App.4th 184, 207.) Parents must make a substantial showing in cases where they have failed "to reunify and establish a parental . . . relationship" or where they do not advance "beyond supervised visitation." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)

Substantial evidence supports the juvenile court's conclusion that mother's relationship with Joseph is not so significant that he will be greatly harmed by its termination. (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575.) Joseph recognized mother and was happy while visiting her. She did not, however, occupy a parental role in his life during his dependency, and she did not progress beyond supervised visitation. Joseph has lived with his aunt and her partner since he was about a year old, and thrived in their care. Joseph looks to them for support and comfort, and shares a strong mutual bond with them. They consider him part of their family and wish to adopt him.

As the juvenile court stated, mother's efforts to recover and improve after the termination of reunification services in Joseph's case were "too little too late." "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it,

7

not when the parent is ready to give it."  (*In re Debra M*. (1987) 189 Cal.App.3d 1032, 1038.)

DISPOSITION

The judgment (orders denying section 388 petition and terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED</u>


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Bruce A. Young, Judge

Superior Court County of Ventura

_____

David A. Hamilton, under appointment by the Court of Appeal, for Appellant.

Leroy Smith, County Counsel, Eric Walts, Assistant County Counsel, for Respondent.