Filed 7/12/16  In re J.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, <br> Plaintiff and Respondent, | E065076 |
| v. | (Super.Ct.No. RIJ1400020) |
| J.R. <br> Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and James E. Brown, Guy B. Pittman, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

The minor, J.R., was made a dependent following a petition alleging, among other things, parental neglect and lack of supervision, which led to the accidental bathtub

drowning of J.R.'s 10-month old sister.  Reunification services were denied to the parents

on the ground that they caused the death of another child through abuse or neglect.[1]

(Welf. & Inst. Code, § 361.5, subd. (b)(4).)  Prior to the hearing for the selection and

implementation of a permanent plan of adoption by the maternal grandfather, mother

filed a petition to change the prior order denying services and to transition J.R. into her

care.  At the hearing, the juvenile court found mother's circumstances were changed, but

that modification of the prior order was not in J.R.'s best interests.  It then proceeded to

find J.R. adoptable, and terminated parental rights.  Mother appealed.

On appeal, mother argues that (1) the juvenile court abused its discretion in

denying mother's modification petition, and (2) erred in finding that termination of

parental rights would not be detrimental to the minor as a result of a beneficial parent-

child relationship.  We affirm.

## BACKGROUND

On December 19, 2013, San Bernardino County Children and Family Services

(CFS) filed a Welfare and Institutions Code section 300[2] petition on behalf of J.R, then

21 months of age, based on parental neglect and failure to supervise resulting in the

accidental drowning of J.R.'s 10-month-old sibling, L.R., in a bathtub.  J.R.'s father had a

---

[1] As to father, an additional ground for denial of services was alleged, but insofar as he is not a party to this appeal, we do not need to address it.

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

history of child abuse and causing the death of a half-sibling and both parents were alleged to have a substance abuse problem. At the time of the intervention by CFS[3] the family home was found to be filthy and unkempt; additionally, there was drug paraphernalia found in the bathroom where the two children were being given a bath at the time of the drowning. There were also concerns about mother's mental health due to a prior involuntary 72-hour detention following an argument between the parents in which mother attempted to stab the father with a knife.

On February 19, 2014, Riverside County Department of Public Social Services (DPSS) submitted its Jurisdiction/Disposition report as to J.R., recommending that no reunification services be provided to either parent due to the allegation that the parents caused the death of a sibling (§ 361.5, subd. (b)(4)), and that father's parental rights had been severed as to a half-sibling from a previous relationship (§ 361.5, subd. (b)(11)), due to the death of that child's sibling as the result of father's abuse. The child, L.R., drowned in six and one-half inches of water in a bathtub, where she was left unattended along with J.R. as mother claimed to have left the room in search of a towel; however, a towel was apparently already in the bathroom, so mother's explanation was questioned.

The report also noted that J.R. had been the subject of a prior child welfare referral for severe neglect when, at the age of two weeks, he suffered burns on his lower left extremities. Mother explained that J.R. had flipped himself onto an electric heater while

---

[3] The case was subsequently transferred due to the placement of the minor with a relative caretaker in Riverside County.

she was trying to change his diaper, but this was deemed inconsistent with his very tender age. The maternal grandfather, present at the time, indicated the infant J.R. was on mother's lap when she stood up to reach for ointment, causing J.R. to fall on the heater.

Further, father had been convicted of willful harm to a child likely to cause death (Pen. Code, § 273a, subd. (b)) in 2007, in connection with the death of a child from a previous relationship, and that he had been convicted of having sex with a minor (Pen. Code, § 261.5, subd. (d)) in 2010.

The report also noted that the mother denied having a substance abuse problem, but had produced positive drug tests, which she could not explain. The social worker doubted mother's honesty in this denial because a drug pipe had been found in the bathroom where her infant daughter had drowned. The maternal grandfather felt the parents were covering for each other respecting the explanation of events that led to the drowning death of L.R. The social worker indicated reunification services for the parents were not in J.R.'s best interests due to father's history of abuse causing death of another child, and the fact mother was aware of this and chose to remain in a relationship with him.

By March 2014, J.R. was placed in the home of his maternal grandfather. On June 10, 2014, in J.R.'s case, the court made true findings on the allegations pursuant to section 300, subdivision (b), as amended, dismissing some allegations. In July 2014, mother's therapist informed the social worker that mother was no longer participating in therapy; she frequently failed to attend sessions or arrived late, and appeared to suffer

4

from cognitive issues and avoidant behavior. The therapist diagnosed mother with personality disorder and did not believe mother was ready to have a child placed in her care. At visits, the parents did not bring snacks for J.R., expressing the belief that they should not have to care for his needs while he was in foster care.

In August 2014, prior to the disposition hearing as to J.R., mother gave birth to another child, I.S., but took the child to Sacramento and granted informal custody to the paternal grandmother and another relative.[4] On August 13, 2014, a sibling petition was filed as to I.S., and a protective custody warrant was issued. (§ 300, subd. (j).) I.S. was detained in foster care.

On October 27, 2014, the juvenile court held the contested disposition hearing as to J.R., and a combined jurisdictional-dispositional hearing as to I.S. J.R. was adjudged a dependent of the court, custody was removed from both parents, and reunification services were denied as to both parents, pursuant to section 361.5, subdivisions (b)(4) (both parents) and (b)(11) (father only). The court scheduled a selection and implementation hearing as to each child. Father filed a notice of intent to file a writ petition in case number E062230, but withdrew the petition, resulting in dismissal of that proceeding on November 24, 2014.[5]

---

[4] Parental rights were previously terminated as to I.S. in a separate proceeding, and were the subject of a separate appeal (*In re I.S.* (Oct. 27, 2015, E063179) [nonpub. opn.]); her case is now final. References to I.S. are provided only where necessary for context.

[5] We take judicial notice of our own records in case No. E062230.

On March 19, 2015, the juvenile court terminated parental rights as to I.S. On appeal, this court conditionally reversed that judgment and ordered a limited remand to the juvenile court with directions to notify the Bureau of Indian Affairs and the Shawnee Tribes pursuant to the Indian Child Welfare Act in an unpublished opinion. (*In re I.S.*, *supra*, E063179, p. 28.)

On June 8, 2015, the social worker submitted an addendum to the section 366.26 report[6] containing a favorable adoption assessment as to the maternal grandfather, with whom J.R. was placed. The report noted that J.R. was developing normally. The parents maintained visitation twice per month, were prompt for visits and interacted positively with J.R. However, mother indicated she had ended her relationship with father, so the decision was made to split up the visits.[7] The social worker indicated mother appeared to be working through issues that gave rise to the dependency, but she still lacked a stable residence.

On October 27, 2015, mother filed a petition to modify the prior court order denying reunification services, pursuant to section 388. She alleged her circumstances had changed in that on her own initiative, she had participated in parenting classes, domestic violence classes, and individual counseling, and she had discontinued her

---

[6] The record does not contain an initial 366.26 report.

[7] The social worker questioned this statement because mother had indicated in the past she was no longer living with father when, in fact, she was, and she had attempted to persuade her aunt to lie for her about living with the aunt in order to convince the department she was living separate from father.

relationship with father. She alleged the modification would be in the child's best interests because she maintains a strong bond with the child and has been given tools with which to be a nurturing parent. The court ordered a hearing on the petition to coincide with the section 366.26 hearing.

On December 10, 2015, the court conducted a contested 366.26 hearing, after considering mothers 388 petition. The juvenile court found that mother's circumstances had changed, but that modifying the prior order was not in the child's best interest. The juvenile court thereafter made a finding that the minor was likely to be adopted and that termination of parental rights would not be detrimental to the child as no exceptions to adoptability applied. The court permanently severed parental rights of both parents to J.R.

On December 21, 2015, mother timely appealed from the judgment.

## DISCUSSION

1.    *The Juvenile Court Did Not Abuse Its Discretion in Denying the Mother's Modification Petition.*

Mother argues that the juvenile court abused its discretion in denying her modification petition pursuant to section 388, on the ground that J.R. had an established bond with mother, and was in a stable relative placement, such that an order granting the petition would not have jeopardized his permanency. We disagree.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or

7

changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317 (*Stephanie M.*).) The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 (*Kimberly F.*).) Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

In evaluating whether the petitioner has met his or her burden to show changed circumstances, the trial court should consider: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 32.)

The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*Stephanie M., supra,* 7 Cal.4th at p. 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

Here, the court made a finding that mother's circumstances had changed, so mother challenges only the court's determination that modifying the prior order would not be in the child's best interest. In this respect, mother focuses on the juvenile court's observation that offering mother reunification services would prolong the child's

8

permanency, arguing that granting her six months of services would not jeopardize the minor's permanency because he was placed with his grandfather.

However, J.R.'s case had already been delayed for more than a year following the dispositional hearing, when services were denied, and J.R. had been in his placement for nearly two years by the time of the hearing on the 388 petition. Although mother attended a program called "Love and Logic – Early Childhood Parenting Made Fun" on April 16, 2014, her volitional participation in services did not commence in earnest until March 2015, after the 366.26 hearing had been continued several times.

In terms of the *Kimberly F.* factors, the minor had lived more than half his life in placement with his grandfather, and the strength of the bond between those two was significant, whereas mother was described by mother's own counsel as having "a bit of a bond." The minor kissed mom when she asked for it, and occasionally asked to see her, but he was fine when the visits ended, so the strength of the parent-child bond, compared with that of the caretaker-child bond is a factor that supported the court's finding. As for the factor relating to the relative ease of ameliorating the problem that led to the dependency, there is nothing in the record to support a finding that mother had even begun to work on those problems, or how long it would take to ameliorate them. The presenting issue was a failure to supervise that had deadly consequences to the minor's infant sibling, which was possibly related to marijuana use. There was also an indication that mother had a mental health history that had never been addressed. In addition, there

9

was an issue with mother's poor judgment in remaining in a relationship with the father, who had a history of child abuse causing death of another minor.

The court had no information upon which to make a finding that the problems that lead to the dependency could be ameliorated within six months. Most importantly, the court was concerned that no one suggested that mother was in a position to have J.R. returned to her, although she had two years to work on issues. "[C]hildhood is brief; it does not wait while a parent rehabilitates himself or herself." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.) The court did not abuse its discretion in denying mother's 388 petition.

2.      *The Juvenile Court Properly Determined that the Beneficial Parent-Child Relationship Exception Did Not Apply.*

At the hearing pursuant to section 366.26, mother argued that she had visited J.R. regularly and that he would benefit from continuing his relationship with her. The trial court noted that the minor had some bond with mother but that terminating parental rights would not be detrimental to J.R. Mother argues that the juvenile court's conclusion that terminating parental rights would not be detrimental was erroneous. We disagree.

Section 366.26, subdivision (c)(1), provides that if the court determines, based on the [adoption] assessment and any other relevant evidence, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption, unless one of several statutory exceptions applies. Once the court determines a child is likely to be adopted, the burden shifts to the parent to show that termination of

10

parental rights would detrimental under one of the exceptions listed in section 366.26, subdivision (c)(1)(B). (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809, citing *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1345.) We must affirm a trial court's rejection of the exceptions if the ruling is supported by substantial evidence. (*In re Zachary G., supra,* at p. 809.)

One such exception applies when the court finds a compelling reason for determining that termination would be detrimental to the child because the parents have maintained regular visitation and contact with the child, and the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) This exception applies only when the relationship with a natural parent promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) A parent's "frequent and loving contact" with the child was not enough to sustain a finding that the exception would apply, when the parents "had not occupied a parental role in relation to them at any time during their lives." (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) The determination of whether a beneficial parent-child relationship exists is reviewed for substantial evidence. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

To establish that the parents have occupied a "parental role," it is not necessary for a parent to show day-to-day contact and interaction. (*In re S.B.* (2008) 164 Cal.App.4th 289, 299; *In re Casey D.* (1999) 70 Cal.App.4th 38, 51.) As the court observed in *In re S.B., supra,* if that were the standard, the rule would swallow the exception. (*Ibid.*)

11

Instead, the court determines whether the parent has maintained a parental relationship, or an emotionally significant relationship, with the child, through consistent contact and visitation. (*In re S.B., supra,* at pp. 298, 300-301.)

Thus, "[t]o overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466, italics in original, citing *In re Lorenzo C.* (1997) 54 Cal.App.4th 1332, 1342.) "The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs." (*In re Angel B., supra*, 97 Cal.App.4th at p. 467, fn. omitted; see also, *In re Bailey J., supra,* 189 Cal.App.4th at p. 1315.)

Here, J.R. has spent one-half of his life in placement with his grandfather, who provided him with stability and support. There was a strong bond between J.R. and his grandfather, whereas the bond with mother was described as "a bit of a bond." While the interaction between mother and J.R. was characterized as positive, there was not such a strong bond that would cause emotional suffering to J.R. if the relationship were severed. In other words, there was a relationship, but not an emotionally significant one.

There was substantial evidence to support the juvenile court's finding that no exceptions to the adoptability finding applied.

12

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                           P. J.

We concur:

HOLLENHORST _____
                          J.

SLOUGH _____
                          J.

13