Filed 7/27/16  In re Aiden D. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re AIDEN D. a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B267951 (Super. Ct. No. J070355) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AMANDA H. and TIMOTHY D.,<br><br>    Defendants and Appellants. | |

Amanda H. (mother) and Timothy D. (father), appeal from the juvenile court's order denying a petition for modification (Welf. & Inst. Code, § 388)[1] and terminating parental rights to eight-month-old Aiden D.  (§ 366.26).  Appellants contend, among other things, that Ventura County Human Services Agency (HSA) did not comply with the notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  HSA cured the ICWA notice defect while the appeal was pending.  We affirm.

*Facts and Procedural History*

On February 11, 2015, HSA detained Aiden after he was born with heroin and marijuana in his system and was exposed in utero to Xanax, methadone, and Tylenol

---

[1]    Unless otherwise noted all statutory references are to the Welfare and Institutions Code.

with codeine. Aiden suffered from drug withdrawal symptoms and was hospitalized for six weeks before he was placed in a foster home.

On February 17, 2015, HSA filed a juvenile dependency petition for failure to protect (§ 300, subd. (b)) and sibling abuse (§ 300, subd. (j)) based on appellants' chronic substance abuse. The petition alleged that appellants failed to reunify with Aiden's sibling (Savannah D.) who was removed and placed for adoption due to appellants' substance abuse.

At the detention hearing, mother indicated that Aiden's great-grandfather may have Indian ancestry from North Dakota, possibly the Sioux Tribe. Diedre Smith, an ICWA paralegal employed at HSA, interviewed mother and the grandmother. When asked if anyone in the family was eligible for tribal membership, the maternal grandmother said "absolutely no, nothing like that." Smith did not interview the great-grandparents and, in a March 23, 2015 memo, reported that HSA had no reason to believe that Aiden was an Indian child. On March 24, 2015, the trial court found that ICWA did not apply.

Appellants set the matter for a contested jurisdiction and disposition hearing but failed to appear at the May 13, 2015 hearing. The trial court sustained the petition and bypassed reunification services based on appellants' failure to reunify with Aiden's sibling and unresolved substance abuse problems. (§ 361.5, subds. (b)(10) & (b)(13).)

Two days before the section 366.26 hearing, mother filed a section 388 petition for reunification services alleging that she had completed 54 days of drug treatment and maintained regular visits with Aiden. The trial court summarily denied the petition for failure to state new facts or change of circumstances and because no showing was made that the proposed order was in Aiden's best interests.

The section 366.26 hearing was conducted on October 29, 2015. Deidre Smith (now an attorney) appeared for Aiden and argued that the court should adopt HSA's recommendation to terminate parental rights. The trial court found that the

2

parent-child beneficial relation exception to adoption did not apply and terminated parental rights.

*Ineffective Assistance of Counsel*

Father asserts that his trial attorney was ineffective in not objecting to Deidre Smith's representation of Aiden at the section 366.26 hearing.[2] The argument is based on the theory that Smith had a conflict of interest because she worked for HSA as an ICWA paralegal seven months earlier.[3] Father speculates that an objection regarding conflict free counsel would have been sustained, counsel could have been appointed for the child, and the trial court may not have terminated parental rights.

In order to prevail on a claim of ineffective assistance of counsel, father must demonstrate that trial counsel's representation fell below an objective standard of reasonableness and resulting prejudice. (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.) "A violation of the right to effective counsel is reviewed under the test of harmless error. [Citation.] 'Thus the parent must demonstrate that it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' [Citation.]" (*Ibid.*)

Father argues that there is no explanation for counsel's failure to object to Smith's representation of Aiden. Smith, however had no conflict of interest. The Sixth Amendment did not require trial counsel to waste the court's time with frivolous or futile objections. (*People v. Memro* (1995) 11 Cal.4th 786, 834.)

Section 317, which provides for the appointment of counsel for a child in a dependency proceeding, states in pertinent part that "[c]ounsel may be a district attorney,

---

[2] Mother joins in the ineffective-assistance-of-counsel argument. Father has joined in mother's argument that the trial court erred in denying the section 388 petition and failed to comply with the notice provisions of ICWA. (*Infra.*)

[3] Attorney Andrew Wolf represented Aiden before the section 366.26 hearing. In October 2015, both Wolf and Smith worked for Dependent Children's Advocates (DCA). Father argues that Smith "replaced" Wolf as the child's attorney but there is no record of that. It is not uncommon for an attorney in the same law firm to appear for another colleague due to a calendar conflict.

public defender, or other member of the bar, provided that he or she does not represent another party or county agency whose interests conflicts with the child's . . . interests." (§ 317, subd. (c)(3).) Smith's prior employment at HSA was as an ICWA paralegal, not an attorney. At the section 366.26 hearing, Smith was not working for HSA or representing a county agency. (See e.g., *In re Celine R.* (2003) 31 Cal.4th 45, 55-57 [attorney may not represent multiple clients if an actual conflict of interest between clients exists].) Nor is this a case in which Smith was privy to confidential information as a paralegal and used the information to benefit a new client. (See e.g., *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 579 [plaintiffs' law firm disqualified after hiring paralegal who previously worked for defendants' counsel].) The cases cited by appellants are inapposite and address attorney-client conflicts in which the attorney successively represented different parties in the same case or multiple parties in a single action with potential adverse interests. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 161 [attorney represented child and previously represented government organization in same dependency proceeding]; *L.A. County Dept. of Children Etc. Services v. Superior Court* (1996) 51 Cal.App.4th 1257, 1271-1272 [dual representation of children prohibited where conflict exists].) Had counsel objected to Smith's representation of Aiden, it would have been overruled.

Prejudice is also lacking. Father must prove prejudice as a demonstrable reality. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1177.) "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Citation.]" (*Harrington v. Richter* (2011) 562 U.S. 86, 104; see *In re Celine R., supra*, 31 Cal.4th at p. 60.)

Father argues that if Aiden had a neutral and unbiased attorney, the attorney may have requested an evidentiary hearing on the section 388 petition or may have argued that the parent-child beneficial relationship barred adoption. But that is not enough. Appellants must show that it is reasonably likely that mother's section 388 petition would have been granted or that the trial court would not have terminated parental rights. One of the primary responsibilities of minor's counsel is "to advocate for

4

the protection, safety, and physical and emotional well-being of the child." (§ 317, subd. (c)(2).) No reasonably competent attorney representing Aiden would have argued that the section 388 petition had merit or that continuing the parent-child relationship outweighed the benefits of adoption.

*Section 388 Petition for Services*

Mother contends that the trial court erred in denying her section 388 petition without an evidentiary hearing. To be entitled to an evidentiary hearing, the parent must make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) We review the denial of a section 388 petition for abuse of discretion; absent a showing of a clear abuse of discretion, the decision must be upheld. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319; *In re Angel B.* (2002) 97 Cal.App.4th 454, 460.)

The petition states that mother received 54 days of drug treatment and used methadone to control her heroin addiction, that she was "presently sober," and that she had maintained regular contact and visits with Aiden. The petition fails to state new facts or a change of circumstances. (See *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 [general or conclusory allegations not enough to make a prima facie showing under section 338].) The trial court already knew that mother had completed 54 days of treatment when it bypassed services. That was discussed in the May 8, 2015 jurisdiction and disposition hearing report. Mother was struggling with drugs and entered substance abuse treatment twice but left treatment each time. After a March 24, 2015 court hearing, mother went with father to a drug dealer's home where she obtained and used heroin and Xanax. Mother returned to her inpatient drug treatment program the next day and was discharged two days later after completing 54 days of treatment. Mother then transferred to an outpatient program (Hollywood Detox Center) but left the program against medical advice eight days later. After mother left the treatment program on April 15, 2015, she

5

failed to submit to drug testing or return calls. Mother showed up at two supervised visits with glassy and droopy eyes and slow speech. The Case Aide reported that mother appeared to be under the influence of an illegal substance.

The section 388 petition also fails to state how the proposed order for reunification services was in Aiden's best interests. Aiden lost a sibling to adoption due to mother's drug abuse. While the dependency proceeding was pending, mother became pregnant with Aiden and continued taking drugs, causing Aiden to be born with heroin in his system. Mother's drug addiction was an intractable problem marked by periods of sobriety and relapse. (See e.g., *In re Cassey D.* (1999) 70 Cal.App.4th 38, 48-49 [nine months of sobriety insufficient to warrant section 388 modification]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety since relapse, "while commendable, was nothing new"]; *In re Angel B., supra*, 97 Cal.App.4th at p. 463 [parent's sobriety very brief compared to many years of addiction].) When it comes to securing a stable, permanent home for a child, prolonged uncertainty about a parent's sobriety is not in the child's best interest. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 674.)

The trial court reasonably concluded that a renewed attempt to facilitate reunification was not in Aiden's best interests because mother was still addressing her substance abuse problem. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 200.) Summary denial of the petition without an evidentiary hearing did not violate mother's due process rights. (*In re Angel B., supra*, 97 Cal.App.4th at pp. 460-461.)[4]

---

[4] Mother argues that the trial court erred when it "rejected admitting" attachments to her section 388 petition. At the section 366.26 hearing, mother's trial counsel advised the court that a letter from a service provider "didn't get attached" to the petition. The trial court stated that it had already signed an order denying the petition "but if you think the letter would make a difference, I'll take a look at it." Counsel said that he had not yet seen the order. The trial court replied, "I think your application was already filed, so I can't attach it [i.e, the letter], but I'll lodge this in the file." Counsel did not object. On appeal, mother makes no showing that the letter would have persuaded the trial court to conduct an evidentiary hearing on the petition. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081.)

6

*Beneficial Parent-Child Relationship Exception*

Mother argues that the trial court erred in finding that the parent-child beneficial relationship exception does not apply. We review for substantial evidence and determine whether the trial court abused its discretion. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) "Because a parent's claim to such an exception is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will choose a permanent plan other than adoption. [Citation.]" (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.)

To establish the parent-child relationship exception, mother must show she maintained regular contact and visitation, and that Aiden would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) It is a two prong test. " 'The exception applies only where the [trial] court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent.' " (*In re Casey D., supra*, 70 Cal.App.4th at p. 50.) Mother must show that severing "the natural parent-child relationship would deprive [Aiden] of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.]" (*In re Angel B., supra*, 97 Cal.App.4th at p. 466.)

The existence of a beneficial relationship is determined by the age of the child, the portion of the child's life spent in parental custody, the quality of the interaction between parent and child, and the child's particular needs. (*In re Angel B., supra*, 97 Cal.App.4th at p. 467; *In re Amber M.* (2002) 103 Cal.App.4th 681, 689.) The parent must show "more than frequent and loving contact, an emotional bond with the child, or pleasant visits. [Citation.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.)

Aiden, who has never lived with mother, was only eight months old at the section 366.26 hearing. Mother's contact with the child never advanced beyond

---

Mother also complains that she was not permitted to cross-examine the social worker about the HSA reports. That is incorrect. Kelly Burnett, the social worker who authored the section 366.26 report, testified and was cross-examined by mother.

supervised visits. The record shows that mother had 16 opportunities to visit Aiden but missed five visits. At two visits, mother appeared to be under the influence of drugs.

Although mother expressed love for Aiden and described warm visits, it lacked the depth required to establish a parent-child beneficial relationship. HSA reported that "[t]he parents have not established a parent-child relationship with Aiden. The child may, at best, view them as friendly visitors who feed and play with him. The parents' visits have been marred by the mother's suspect behavior of being under the influence of an illegal substance, and the father acting in a manner with the child that caused him harm and discomfort. During joint visits, the father . . . acted in a controlling manner with the mother, directing her parenting activities." Aiden is closely bonded to his fost-adopt parents who have provided the only home that Aiden has ever known. Although mother's visits are pleasant and emotionally significant, it is no substitute for the consistent, daily nurturing that Aiden so badly needs. The cases cited by appellant are inapposite in that no social worker, therapist, psychologist, or caregiver has reported that severing the parent-child relationship would be detrimental to Aiden. (*In re Amber M., supra*, 103 Cal.App.4th at p. 689; *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1207.)

Based on Aiden's tender age and needs, the trial court reasonably concluded that Aiden's long-term emotional and development interests would be better served by the permanency of adoption. (See e.g., *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1013.) It was a " 'quintessentially' " discretionary decision but not a close call. (*In re Bailey J., supra*, 189 Cal.App.4th at p. 1315.) "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

### *ICWA Notice*

Mother contends, and HSA agrees, that the trial court failed to comply with ICWA by not sending notice to the Sioux Tribe in North Dakota. We have granted HSA's motion to augment the record which reflects that HSA mailed revised ICWA

notices to the Bureau of Indian Affairs and Sioux Tribe in North Dakota. (See *In re Christopher I.* (2003) 106 Cal.App.4th 533, 562-567 [appellate record augmented to reflect that newly sent ICWA notices were adequate]; *Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 867 [same]; *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1432.) On June 22, 2016, the trial court found that ICWA did not apply. (§ 224.3, subd. (e)(3).) HSA corrected the ICWA error and has fully complied with the relief that mother seeks.

The judgment (orders denying section 388 petition and terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.

9

Tari L. Cody, Judge

Superior Court County of Ventura

_____


Claire Abrams, under appointment by the Court of Appeal, for Defendant and Appellant, Amanda H.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant, Timothy D.

Leroy Smith, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Petitioner and Respondent.